Okay, good morning. I'm the attorneys on Papadakis and I know how to say it because it's been in the news a lot. Fitness 19, approach the podium. It's a different Papadakis. Good morning, your honors. Good morning. Angel Bacoff on behalf of plaintiff, appellant Maria Papadakis, Angel, A-N-G-L, last name Bacoff, B-A-K-O-V. I'm sorry, could you do it one more time? B-A-K-O-V. Bacoff? Yes. Okay. Mr. Bacoff, we have 20 minutes. Did you want to reserve time for rebuttal? Yes, if I could have five minutes for rebuttal. Certainly. All right. And for fitness? Hugh Griffin. That's an easy one. I know how to spell that. On behalf of the Fitness 19 entities. Good morning, Mr. Griffin. All right. Mr. Bacoff, you can proceed. May it please the court, counsel. Your honors, it is well established law in Illinois that an employer may be liable for a willful act of its employee when such act is committed in the course and scope of employment and for the benefit of the employer. Now, in this case, the circuit court granted summary judgment to the employers of Mr. Chad Drake, who is the personal trainer that my client, Ms. Maria Papadakis, obtained. And because the well-plead allegations in the complaint under respondeat superior, the allegations relating to Drake's condom and defendant's admission regarding Drake's employment all establish that Fitness 19 is not liable for a willful act of its employee. And that Fitness 19 Holdings were the employers and it is our position that as such, they should have been held liable for the willful conduct of its employee, Chad Drake. In this case, I had filed an amended complaint wherein I added willful and wanton conduct allegations against Mr. Drake and against the two corporate entities, its employers. The defendant had filed a motion to dismiss. The court issued a ruling relating to the motion to dismiss wherein it found that plaintiff's complaint alleged sufficient facts to establish that Mr. Drake demonstrated a conscious disregard for the safety of plaintiff. That was count four? Yes, your honor. That was count four. Is that the only count that survived after summary judgment? That is correct, your honor. I also had separate counts pursuant to the doctrine of respondeat superior against Fitness 19 and F19 Holdings based on the conduct of Mr. Drake. Those were dismissed and those were dismissed pursuant to a motion for summary judgment that the defendant had filed. And the court in that ruling found that because my complaint did not plead specifically, did not have a specific count that stated willful conduct, therefore, the employers were dismissed. It is our position that what is controlling in a complaint are the actual well-plead allegations and facts of the complaint, not the technicality of a title of a count. My second amended complaint has common law, common facts that relate to all the counts and I have facts in there that substantiate Mr. Drake's conduct and his reckless disregard when it came to this personal training appointment. And on that amended complaint, the trial court denied you leave to file it. Is that correct? No, that was the third, that was the next one. The next one, I fixed that issue and I sought leave to amend in order to caption the count correctly and rather than negligence, I captioned it willful conduct, respondeat superior against F19 Holdings and against Fitness 19. So really the only thing you did was change the caption? Correct, your honor. So you believe all the allegations that were necessary before were actually in this section? Mr. Drake's knowledge of the dangerous condition, the fact that this biometric step had always been used in the rubber area of the fitness facility because it provided more stability. The carpet area was very smooth. With respect to the use of this biometric step, at every other time he had used it with my client, he had placed it against the wall or somehow held it in place when she was performing exercises on it. The specific exercise that she was asked to perform was just to tap her toes on top of the biometric step, alternate, do it repeatedly anywhere from 15 to 20 reps. So all the other previous times, he had either secured it against the wall or he held it in place. This time for some reason, because according to the testimony, that area of the gym, the rubber floor area was not available, he made the conscious decision to use the biometric step in the carpeted area. This time the biometric step was freestanding. In fact, my client, when she was asked to perform this exercise, she conveyed to Mr. Drake that she did not feel comfortable doing it. She did that repeatedly. Right. And he said, well, you know what, why don't we try it once and if you don't feel comfortable, I will demonstrate in front of you that it's safe. And when he did that, he actually slipped on the biometric step himself. And he said, don't worry about it, I'm going to be here watching you the entire time and if anything happens, I'll be there to catch you. So she does the exercise the first time and lo and behold, she does not feel comfortable, she almost trips herself. So then after she does the first set of repetitions, she steps back, she steps back, and again, she enforces concerns. She says, Drake, I don't feel comfortable doing this. Are you sure we should be doing this in this part when the biometric step is freestanding? He again assures her it's just a mental block. Do it. The third set of repetitions, she's getting a little bit tired. I mean, this is a cardio exercise. The biometric step pushes forward, slips under her, and she falls, landing on her wrist, breaking it in two parts. At the time when she actually fell, Mr. Drake admitted it in his deposition that he wasn't even observing her. He was putting away a bowling ball at the time, so he wasn't even watching her. All those allegations were pled in my Second Amendment complaint under the common law section of the complaint and also under the respondent superior counts, both, again, FITNESS-19 and F-19 holdings. Those demonstrate a conscious disregard for the safety. They demonstrate knowledge of a dangerous condition, which Mr. Drake made a conscious decision to disregard. But at some point, isn't the defendant entitled to know what you're going to trial on? I mean, if you say negligence in your complaint, the facts are the facts. Most of what you just said was in the complaint, was in counts two and six. Not all of it, but most of it. But at some point, so the facts are what they are, but you never use the buzzwords. Buzzwords alone are not sufficient, but you never use them. You don't say conscious disregard, utter indifference to the safety, any of that. You certainly don't say willful and want. At what point does the defendant get to know as they're gearing up for trial, hey, this is what we've got to defend in court? Sure. Thank you for the question, Justice Ellis. My response to that would be there is no separate thought of willful conduct. Willful conduct is a form of negligence. It's actually an aggregated form of negligence. It actually requires the same standard of proof. It requires that I allege that there is a duty, that there is a breach of the duty, that there is a breach was the proximate cause of the injury, all of which were alleged under my count. Didn't you have, though, separate willful and want counts against the two corporations? I did, Your Honor. That was based on what, negligence, entrustment? That was based not on the conduct of Drake. That was actually based on the lack of training, lack of supervision, lack of inspection as to any of their equipment. And that's not an issue in my opinion. I understand. But so going back to what Justice Ellis said, didn't you suggest then to the defense that the theory for willful and wanton against the employer was that they negligently employed this person or entrusted the machinery to him, as opposed to their own employees' willful and wanton conduct? That was in conjunction to my allegations, Your Honor. So I suggested both that they were willful based on the conduct of their employee, Drake, and also they demonstrated willful conduct based on any lack of training and supervision. Yeah. But in your actual complaint, you didn't set it out that way. You set out the willful and wanton of the employer based on their either negligent entrustment or employment of Chad Drake. Yes, Your Honor, because I believe that the allegations contained under the negligence responded superior. Allegations were sufficient to establish and prove the conscious disregard for the safety of my client. And if you actually, I would like to refer your attention to the actual second amendment complaint. And in there, I have specific allegations under the responded superior negligence theory regarding Drake's conscious decision and his knowledge of the existing dangerous condition, which is one of the elements that must be proven in order to be allowed to go forward with a willful and wanton complaint. So you're saying you have that in the actual willful and wanton counts? I have it both in the comment section and also in that specific responded superior negligence count 2. In the second amendment? Yes, I do. All right. If you look at actually, it's C00919. I'm looking at page 16 of the complaint. Like instructing plaintiff to use the willful and wanton? Yes, instructing plaintiff. Even though he knew or should have known? Even though he knew or should have known that the parametrics that pose the safety risk to plaintiff. Instructing plaintiff to utilize it while it was freestanding. And in the court's decision in its decision relating to the motion to dismiss the defendant's file and also in its decision to the motion for subpoena judgment, the court specifically mentions that the willful and wanton conduct of Mr. Drake relates to him ignoring the known danger and allowing her to use the exercise equipment. And that specific allegation is contained in my second amendment complaint. It is our position that it is the actual factual allegations that control a theory of liability, not the technicality of putting the correct title on account. So that's the first issue. The second issue is I had also filed a motion to amend subsequent to the ruling of the motion for summary judgment, basically seeking to amend my complaint to correct the deficiencies that were raised in the motion for summary judgment and were the reason why the counts against the two employers were dismissed. That motion was denied. Part of the reason why we're here today.  The second issue is I had also filed a motion to amend subsequent to the ruling of the motion for summary judgment, basically seeking to amend my complaint to correct the deficiencies that were raised in the motion for summary judgment. That motion was denied. The third issue is I had also filed a motion to amend subsequent to the ruling of the motion for summary judgment, basically seeking to amend my complaint to correct the deficiencies that were raised in the motion for summary judgment. That motion was denied. The fourth issue is I had also filed a motion to amend subsequent to the ruling of the motion for summary judgment, basically seeking to amend my complaint to correct the deficiencies that were raised in the motion for summary judgment. The rule does give you discretion to make a determination whether or not you have jurisdiction over that issue. I don't know if it's that standard, but I would say that we have to look at the notice of appeal. Certainly, you've argued the motion to reconsider should have been allowed. Much of what you've argued, I think, is based on actually looking at your complaint. But I just wanted to get your take on the jurisdiction because the order, the notice of appeal refers to specifically the motion to reconsider. Correct. It's a date. It does not suggest the date when the judge denied your motion to leave to amend the complaint, does it? It does not, Your Honor. The notice of appeal only specifically identifies the motion for reconsideration. I'm not saying that it is sufficient, but it is my position that it is sufficient because it put defendant on notice as to the arguments to be made and that relief sought. All right. Are there any other questions? Thank you. Otherwise, I'll reserve some time. Thank you. Thank you. Mr. Griffin. Thank you, Your Honor. We're really here today on a very narrow issue, and that is count six of the second amended complaint, which is titled Negligence Responding at Superior. And if you read the rest of it, it's all about an exercise, failure to exercise due care. And negligence is repeated throughout. And so Judge Axelrod was faced. I mean, he really didn't have any choice but to grant summary judgment because everybody agreed because of the release in the agreement that the plaintiff signed when she undertook her training. There's no, you've released all claims for negligence. So all that was left was the one willful and wanton count against Drake. And as you mentioned, there's a lot of facts about that that haven't been litigated and will be litigated if that count still remains pending below, and there will be a trial on that. But the position was that the summary judgment shouldn't have been granted because within the body of the complaint, and not the third, but the second amended complaint, that within that, plaintiff had pled a willful and wanton allegation, so to speak, based on the employee's willful and wanton conduct, right? He never said that, Judge. No, I'm just saying his argument is that if you read through this whole thing, that the common factual allegations and actually a paragraph the counsel just referred to actually suggest a pleading that incorporates willful and wanton against the employer based upon respondent superior or the position that the willful and wanton conduct of the corporation is because of the employee's utter indifference. But if it's in there, that's what their argument was, I believe. Are there facts in there from which a count might have been drafted? Yes. But the plaintiff is a master of his pleadings. He decided to plead this case in six counts, and the only willful and wanton count that he chose to plead was the direct action against Drake. When he got to the fitness entities, it was all negligence, and he had one respondent superior count, count six, clearly framed only negligence, and that's it. I mean, there's the old saying, you know, pleadings without proof or proof without pleadings are both deficient. Well, we don't really, though, we're not really tied to the title. Are we looking at the substance at the end of the day? Yes, you can look at the substance of count six, and as I say, I just come in the 21st century. But, you know, following negligent acts or omissions, and then those are laid out as a direct result of one or more of these negligent acts or omissions. You used the word negligent in the conclusions. I mean, I think the case law has generally said we don't get hung up on titles, and we don't get hung up on the legal conclusory buzzwords like, even if you said utter indifference or reckless disregard or conscious disregard, there was lots of case law that said, okay, that's great, you said those words, but your facts didn't support those words. And here we sort of have the inverse, right? They've got facts that talk about the idea that this person moved the plyometric step from a safe spot to a dangerous spot. He ignored her warnings. He insisted, I think is the word, that she continue to do it more than once when she expressed concerns for her own safety, and then he walked away. Those are all in. Those facts are all in Counts 2 and 6. There was going to be a trial about all that. Okay, but those facts are all in Counts 2 and 6, aren't they? They don't. They're not accompanied by the words you would expect to see for Wolfram One, but those facts are all there, right? The facts are there. Okay. It's up to the plaintiff to frame those facts into a legal complaint. I mean, what's Judge Axelrod supposed to do? He says, well, you didn't give me any Wolfram One claims in any of these counts. I'm responding as superior against the fitness entities. Well, if we had jurisdiction on the motion for leave to amend, you've argued we don't. Yes. All right. If we did, why shouldn't the Court have allowed an amendment? Well, I think you have to look at his ruling in the context of what the status of the case was at that time. Well, it was set for trial. It was set for trial in 30 days. Obviously, this pleading could have been done that was trying to finally be done. It could have been done at any time since 2014. You're prejudiced. That's one of your loyalties. Well, I'm only prejudiced. I mean, the plaintiff obviously thinks it's important to get the fitness entities in. He must be able to advance his case to have us in there in addition to Drake. But if you really – the answer to me about this whole appeal is you'll notice in the record toward the end that there was an emergency motion. The plaintiff didn't want that. He didn't want to go to trial. He fought for that trial date, opposed our attempt to extend it. Then, at the end, it wasn't ready. And he made an emergency motion for Judge Flannery to continue the trial date, then not. Well, wasn't that all? I think that's why we're here. I think that's why we're here. Well, there was a motion. There was a summary judge motion that was heard. That was granted except to the Wilma Watt remaining for Drake. Yeah. And that was ready to go to trial. We were ready to go to trial, and that plaintiff did not want to go to trial. Well, the summary judgment motion came first, right? Which? The summary judgment came first. Right. Okay. That was, what, a month before the trial? Yes. Okay. And at that point, the court said – the court granted the motion for summary judgment because of the contract provision that waives liability for negative action. Right. All right. So even though the case was set for trial in a month, the summary judgment matter that actually disposed of the whole basic guts of the case happened 30 days before, right? Right. Okay. And at the same time, when the court disposed of everything, within that same time frame, counsel asked if he could amend the complaint. Right. And then Judge Axelruth said, well, he did not – I can't remember the order. He did not – he died with the motion to reconsider, and either maybe a day after or before, then he said, and I'm not going to grant you – Right. Okay. And right around there was the same time that he was asking to extend the trial date. Is that right? Right. So it was all happening then. Right. Okay. But as you say, Wolfman wanted – he and Wolfman wanted a complaint before this, as you pointed out, against the fitness entities, not on responding in superiority. So if it is really there, if it wasn't there the whole time, did the court err when it denied the motion to reconsider the summary judgment? Absolutely not. I mean, I'm sure you know –  You know this law better than I do.  When you file a new complaint, that often brings faults. If it was all there, didn't the court err and grant the motion for summary judgment? But you have to – I would – I don't know of any case that says, well, you never framed this into a cause of action. We have a lot of facts in there. But you never framed it, and you framed six causes of action here. But you never framed that one. Your choice? I don't know of any case that says, well, I'm going to –  well, I'm going to – okay, on these counts, amending the summary judgment, but I'm going to deny it on a count you didn't plead. I don't know why you could do that. Well, I mean, I don't understand if we have jurisdiction over the motion for leave to amend, and you're allowed to amend pleadings at any time, you know, before and after judgment to conform the pleadings to the proof. And if the court allowed the leave to amend, if that would give you time, you know, the trial date probably would have to be continued, obviously, you know, so that you can drive a case based on a theory that's actually being, you know, interjected very late in the sentence. We're under a different standard of review now, of course. Yes. It's a motion to amend. It's an expression, and again, he certainly – I cited cases in the brief where it says, Well, you come in on a motion to amend after a summary judgment. The court's within its power to say, hey, that's too late. Plus the fact that if you're not bringing up anything, you're not bringing up anything you couldn't have pled five years ago. What's the best case you have that says that motion to amend after summary judgment is not, you know, the court's within its discretion to say, too late, sorry. All right. Page 13 of our brief, we cite two cases of Freedberg and Harrington. In Freedberg, they said, although summary judgment had not yet been entered, plaintiffs sought to leave the file and then a complaint. The motion for summary judgment had been filed. Argument had been heard. Court's ruling was scheduled. So, again, we're within the – again, we're within that standard review, you know, with no reasonable judge have made this ruling. And, again, when you're not talking about anything new, something that could have been pled basically from the very get-go, and the counsel's held to know the law. Counsel, you can probably cut that either way, right? I mean, another way of looking at that is the defendants knew that the claimant trial was going to be that Chad Drake was Wilflyn 1 because that count was going to trial. I don't know if the same lawyers were representing everybody, but I think they were. Yeah. Okay. So, representing Chad Drake and the Fitness 19 defendants, you know that this trial is going to be about was Chad Drake Wilflyn 1. And you know that there's really going to be no proof about the corporate defendants other than the three things you have to prove for respondent superior, which I don't know if you would choose to contest those or not, but they didn't seem all that tough. I mean, there didn't seem to be much of a contest about it. It was all about was Chad Drake Wilflyn 1. So, if they, you know, to Justice McBride's point, if they were going to amend the complaint, they would have been adding a technical change to something that you already knew you were going to be trying, right? Well, I don't know it until they pleaded against me. I mean, I still think they have a duty to put their cause of action into it. But it's not like your entire defense was going to have to alter course because now there's these new claims. It was going to be the same trial over the same defendant. I can't dispute that. Again, I came back to, you know, I don't know why we're here. I really don't, except I don't think Plaintiff was ready to go to trial and saw a way to get on the appeal calendar. We were going to trial on Chad Drake, who admittedly had been our employee. I just think. So, you were going to really, as Justice Ellis pointed out, what you were going to defend against was whether or not your employee was Wilflyn 1, right? Absolutely. And under this scenario, the corporations, you know, under the case law, will be equally liable for that conduct of their agent. Well, he wasn't going to get a judgment against us because he didn't plead them. Well, no, I mean, I'm asking. Is it going to make a radical difference? I'm still thinking about if we had jurisdiction over the motion to amend, how are you prejudiced when the defense is the same no matter how you slice it? You have to defend against whether or not Chad, the employee of the two corporations, was Wilflyn 1. So, is there really prejudice there? I don't know. Well, the plaintiff must think there is or I don't think we'd be here. I mean, obviously, every plaintiff would rather have a corporate defendant, I think, in the case than just an individual. Maybe he didn't think that the judge was going to throw out all the counts except the one, Wilflyn 1, against Chad Drake. Maybe the plaintiff thought that the Wilflyn 1 against the two corporations was going to stand. He never got that. That was the first time we had a complaint. He never brought that. I don't believe so. No, in the summary judgment, weren't there six counts standing? There were six counts. Yes. And three of them were Wilflyn 1, two involving the corporations and one involving Chad, and then the others were the three negligence counts. Well, here's the way I got it. Count 1, direct negligence, fitness 19. Count 2, responding at superior negligence, fitness 19. Count 3, direct negligence, Chad Drake. Count 4, direct Wilflyn 1 conduct, Chad Drake. Count 5, direct negligence, F19. Count 6, responding at superior negligence, F19. You're thinking of a prior complaint where he did have Wilflyn 1 allegations against the corporation based on training and hiring. Okay, so those were not in the second. Those have been left behind by the plaintiff, the litigator. Okay. All right, well, I'm mistaken. So there's no Wilflyn 1 against the employer here, you're saying, or the corporation. In the second. The judge actually put that in his order. I have your motion reconsidered. I've looked at it. There's nothing about Wilflyn 1 against the corporation in that second amendment complaint, so I'm denying your motion. All right. Thank you very much. Thanks for having us over. Mr. Packa. Thank you, Your Honors. There's been a longstanding preference to serve the interest of serving justice for cases to be resolved on their merits rather than on technical deficiencies. So I think in this case there is no dispute that Fitness 19 and 19 Holdings were the employers of Mr. Chad Drake. There has also been an express finding by the trial court that there, at the very least, is a question for the jury to determine whether or not his conduct constituted willful actions. So I think in the interest of serving justice, this case should be left to be resolved on its merit, and that's why the employer should be reinstated based on the willful conduct of their agent. With respect to the motion to amend and the four factors that were just discussed, my amendment, the first factor talks about whether any amendments would cure the defective pleading. I believe my third amendment complaint certainly would have cured the deficiencies that were, the alleged deficiencies that were raised in the ruling on the motion for summary judgment because in my third amendment complaint I had specific counts of willful conduct under Respondent Superior against the two employers. With respect to the second factor, prejudice to the other parties, as Your Honors raised, they were represented by the same counsel. This is not a new cause of action. They were well aware that this was going to be our theory of the case, that Chad Drake acted willfully and showed conscious disregard for the safety of my client. And when it comes to timeliness and delay, this exculpatory agreement that was at issue and why motion for summary judgment was granted on the negligence claims, the defendant had this in their possession well before even the case was filed, so they waited until the eve of trial to even file their motion for summary judgment. If they had that agreement, why did they wait? Why didn't they just file a motion to dismiss when I first filed my initial complaint? And no, I couldn't have pled my willful and wanton counts at the exact time I filed my complaint because there had not been any discovery made. I didn't discover the fact that Mr. Drake was not even in close proximity to my client when she filed until I took his deposition, and he told me so. That happened well after my complaint was filed. So in terms of timeliness, it was only 26 days after the ruling on the motion for summary judgment that I sought leave to amend my complaint. That was when this deficiency was first brought up. It was my position, and it's my position now, that my Second Amendment complaint did have sufficient allegations in it to sustain a willful and wanton count against the two employers based on their respondeat superior doctrine, even though it said negligence rather than willful conduct. I think those are just semantics. I think it's just the title. We should abide by the actual factual allegations of the complaint, not by a title of account. Those are all the points I wanted to address. Thank you, Mr. Griffin. Thank you. That's okay. Thank you, Mr. Griffin. The court will take the matter under advisement. We'll issue a ruling as soon as possible.